TOWN OF STRAFFORD v. COUNTY OF STRAFFORD.

Upon the division of the town of Barrington, which took effect in March, 1821, a pauper having a settlement in the old town, but residing in the part made into the town of Strafford, can not be regarded as having gained a settlement in the new town after January 1, 1820, within the meaning of the Act of July 4, 1861.

THE county commissioners for the county of Strafford, pray the opinion of the full court upon the following case, arising in that county :

The town of Strafford claims from the county, payment for the support of certain paupers, who, for the purposes of this case, it is admitted are chargeable to the county, unless they gained a settlement in the town of Strafford by reason of the following facts :

The paupers (or those from whom they derive settlement) had a settlement in the town of Barrington prior to 1820, and had their last dwelling place in that part of the town which is now Strafford. In 1820 an act of the legislature was passed, incorporating that part of Barrington into a town, by the name of Strafford, which act took effect on the second Tuesday of March, 1821.

Section 2 of the act provides " that the public property of the town of Barrington shall, by the committee appointed by said town for that purpose, be equally divided between said town of Strafford and the remaining town of Barrington, as soon as may be after said second Monday of March (1821), and the paupers of the present town of Barrington shall in like manner be divided between said town of Strafford and the remaining town of Barrington, according to the expense of supporting them."

The paupers of the old town of Barrington were divided by said

committee between the new towns of Barrington and Strafford, accordingly.

None of the persons whose support is now claimed for (nor of those from whom they derive settlement), were paupers in 1820.

The question is, did the persons now paupers (or those from whom they derive settlement) gain a settlement in Strafford by virtue of its incorporation, so as to be liable to be supported by said town under chapter 2482, Pamphlet Laws of 1861?

*Wheeler & Hall*, for the plaintiff, cited Comp. Stat., ch. 89; *Bath* v. *Bowdoin*, 4 Mass. 452; *Buckfield* v. *Gorham*, 6 Mass. 445; *Walpole* v. *Hopkinton*, 4 Pick. 357; *Sutton* v. *Orange*, 6 Met. 484; *Gilford* v. *Gilmanton*, 20 N. H. 456.

*C. H. Bell*, for the defendant, cited Pamphlet Laws, 1861, ch. 2482; Comp. Stat., ch. 60; *Merrimack* v. *Hillsborough*, 19 N. H. 550.

BELLOWS, J. By a law of this State, which took effect March, 1821, the town of Barrington was divided, and a part made into the town of Strafford. The persons for whose support the town of Strafford claims payment of the county, then had a settlement in the then town of Barrington, but were living, at the time of the division, in that part which is now Strafford, and were not then paupers.

By the Revised Statutes (ch. 65, sec. 1, 8th mode) it is provided that "upon the division of any town, any person having his settlement therein shall thereafter have his settlement in that town in which his last dwelling place shall have been." Under this law it is conceded that the settlement of the paupers in question was in Strafford from the time the division took effect. The law of July 4, 1861 (ch. 2482), provides "that no town shall be liable for the support of any person unless he, or the person under whom he derives his settlement, shall have gained a settlement therein since the first day of January, A. D. 1820;" and the question now is, whether the paupers gained a settlement in the town of Strafford since January 1, 1820, within the meaning of this law. It is clear that they had no settlement in Strafford before that time, for no such town existed; but they had gained one previously in Barrington, from which Strafford was taken, and this existed down to the time of the division. To that time the whole town, as one body, was chargeable with the support of all poor persons having settlements there, without regard to the section of the town in which they might chance to live; and, upon the division taking place, the burthen by the general law was divided between the parts, imposing upon each the obligation to maintain such as dwelt last within its limits.

It is obvious, from the nature of the general law, as well as the act of division in this particular case, that it was the purpose of the legislature to make an equitable division of this burthen between the two towns; and, therefore, a construction that would impose upon the new town the continued burthen of maintaining the poor

within its limits, which, at the division, had settlements in the old town, and at the same time would cast upon the county the burthen of supporting similar persons in the old town, should be avoided, unless plainly required by the terms of the act, for the effect would be to make the new town support its own share of such poor persons, and also contribute, through the county taxes, to the support of the share of the old town. So, too, in respect to all divisions of towns between January 1, 1820, and the passage of the law of 1861, as suggested by the plaintiff's counsel, paupers of the character in question must be supported by the county if falling within the old town, but by the new town, if falling there.

We are of the opinion, however, that the paupers in question have not gained a settlement in the town of Strafford since January 1, 1820, within the meaning of the law of July 4, 1861. By the express terms of the Revised Statutes (ch. 65, sec. 1), a previous settlement in the old town was essential to a settlement in the new, and whether such previous settlement existed or not would require an investigation reaching back sometimes as far as 1796. Such an investigation, we may well believe, it was the policy of the law of 1861 to avoid. In *Gilford* v. *Gilmanton*, 20 N. H. 456, the settlement of the pauper in Gilmanton was claimed to be derived from her father, who, under a law passed prior to 1796, had a settlement in Gilmanton at the time it was divided and Gilford created, his last dwelling place having been in the old town. It was held that as his settlement depended upon laws passed before 1796, it could not, since the statute of 1841, be proved, and that the act severing the town of Gilmanton did not make the case an exception. The decision here goes to the point, that under the act of division of the town of Gilmanton no settlement was gained within the meaning of the law of July 3, 1841, in the town of Gilmanton, and it is an authority in the case before us. Had a new settlement been gained by the division which was in 1812, it of course must have been under a law passed since December 31, 1795, and the action would have been supported.

But it is said that there was a difference between the law of 1828 (Ed. 1830, ch. 3, sec. 7) and the Revised Statutes (ch. 65, sec. 1), before quoted, but we perceive no difference that could effect this question. The authority of this case is however somewhat weakened by the subsequent decision in *Merrimack* v. *Hillsborough*, 19 N. H. 551, where it was held that an illegitimate child, born in 1807, would, by virtue of the act of January 1, 1796, take the settlement of its mother, although it was acquired prior to 1796. And yet this doctrine in *Gilford* v. *Gilmanton* is fully sustained by the recent case of *Pittsfield* v. *Barnstead*, 38 N. H. 115. Indeed, under the law of July 3, 1841, as originally passed, and as condensed in the Revised Statutes (ch. 65, sec. 8), it is difficult to perceive how any serious question could have arisen. The original act provides that no person shall have a settlement in any town, &c., " unless such person has gained a settlement in such town or place, in his or her own right, under or by virtue of some act of the legislature passed since the 31st day of December, A. D. 1795; or .

unless such person has a settlement in some town or place in this State by deriving the same directly, or through one or more persons from another, who has gained the same under and by virtue of some act passed since that day." The law as revised is, "that no town shall be liable for the support of any person, unless he, or the person under whom he derives his settlement, shall have gained a settlement therein under some law passed since the 31st day of December, A. D. 1795."

In *Pittsfield* v. *Barnstead*, 38 N. H. 115, this is said to be a substantial reënactment of the law of 1841, and in that we fully concur. So in *Andover* v. *Merrimack County*, 37 N. H. 437, it is held that in determining the settlement of a pauper, any facts occurring before 1796, are to be regarded as entirely immaterial. See, also, *Gilford's Petition*, 20 N. H. 278.

The question, however, before us, is not as to the effect of the law of 1861 upon settlements by derivation from persons who acquired them before 1820, but whether persons who have unquestioned settlements in a town at the time of its division, can be regarded as having gained new ones, as the effect of such divisions, in the towns in which they may chance to fall; and for the reasons assigned, we think they do not, but that the settlement in the new towns is to be regarded as a continuation of the old one, resulting from an apportionment between the parts of the burthen which before was common to the whole.

To establish such settlement, the same investigation would be required as would have been necessary to have proved a settlement in Barrington before the division, with the addition that the pauper's last dwelling-place was in Strafford, at the time of the division, and such investigation was designed to be avoided by the act of 1861.

On these facts we think the paupers did not gain a settlement in Strafford after January 1, 1820, within the meaning of the Act of July 4, 1861.